UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CATHERINE T. COOK,

                       Plaintiff,

            V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                      Defendant.

_____

**REPORT AND
RECOMMENDATION**

08-CV-1351
(TJM/VEB)

## I. INTRODUCTION

Plaintiff Catherine T. Cook applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since November of 2004 due to various mental and emotional impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, through her attorneys, Legal Aid Services of Central New York, Inc., Christopher Cadin, Esq. of counsel, commenced this action on December 18, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 11).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff applied for DIB on April 21, 2005, alleging disability beginning on or about November 17, 2004. (T at 32).[1]  Plaintiff filed an application for SSI benefits on or about May 17, 2005. (T at 33).  The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on January 17, 2007, in Syracuse, New York before ALJ J. Michael Brounoff.  (T at 410).  Plaintiff, represented by counsel, appeared and testified.  (T at 420-450).  David Festa, an impartial vocational expert, also appeared and testified. (T at 450-463).

On March 21, 2007, ALJ Brounoff issued a decision denying Plaintiff's applications for benefits.  (T at 19-31).  The ALJ's decision became the Commissioner's final decision on October 21, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 5-8).

Plaintiff, through counsel, timely commenced this action on December 18, 2008.  (Docket No. 1).  The Commissioner interposed an Answer on January 28, 2009. (Docket No. 6).  Plaintiff filed a supporting Brief on March 2, 2009. (Docket No. 8).  The Commissioner filed a Brief in opposition on March 5, 2009. (Docket No. 9).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons that follow, it is respectfully recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, and that this case be remanded for calculation of benefits.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

3

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009. The ALJ also concluded that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability, November 17, 2004. (T at 21).   The ALJ determined that Plaintiff had the following impairments considered "severe" under the Act: major depression, social/generalized anxiety, and obsessive compulsive disorder. (T at 22).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments found in 20

---

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 24).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work at all levels of exertion. (T at 24). However, the ALJ determined that Plaintiff was limited, due to her non-exertional impairments, to work in a low stress environment, with no production pace requirements or supervisory duties and only simple decision-making. (T at 24). Further, the ALJ concluded that Plaintiff should avoid crowds and the use of telephones. (T at 24). The ALJ found that Plaintiff could maintain time and attendance to work if these restrictions were observed. (T at 24).

The ALJ determined that Plaintiff was capable of performing her past relevant work as a library page. (T at 29). In the alternative, the ALJ found that considering Plaintiff's age (46 years old as of the alleged onset date), education (high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff can perform. (T at 30). As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, from the alleged onset date to the date of the ALJ's decision. (T at 31).

As noted above, the ALJ's decision became the Commissioner's final decision on October 21, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 5-8).

**2.     Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should be reversed. As a threshold matter, this Court notes that the brief submitted by Plaintiff's counsel is poorly organized. To wit, the brief is not divided into sections separately treating each argument, as required by General Order No. 18. Instead, Plaintiff purports to raise a single

6

"argument," spanning thirteen (13) pages.  These pages contain numerous claims, arguments, and assertions.  In addition, legal arguments are mixed together with the factual summary, making it somewhat difficult to discern the exact nature and basis of Plaintiff's arguments.

It appears that Plaintiff offers four (4) principal arguments in support of her motion.  First, Plaintiff argues that the ALJ erred by failing to find that her Post-Traumatic Stress Disorder ("PTSD") was a severe impairment.   Second, Plaintiff challenges the ALJ's residual functional capacity ("RFC") assessment.  Third, Plaintiff argues that the ALJ erred by finding that she was capable of performing her past relevant work as a library page.  Fourth, Plaintiff contends that the hypotheticals presented to the vocational expert were flawed.  This Court will address each argument in turn.

### a.    Severity of Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16,

2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999)(quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In this case, Plaintiff was diagnosed with PTSD in May of 1999. (T at 173).  Plaintiff argues that this condition, which was related to a sexual assault, caused her to have difficulty interacting with men, made her fearful of work situations, and "uptight and anxious at work." (T at 92).  The ALJ concluded that Plaintiff's PTSD was a non-severe impairment. (T at 22).  Plaintiff contends that the ALJ's decision in this regard amounted to reversible error.  This Court finds Plaintiff's argument unavailing.

The PTSD diagnosis was made more than five years before the alleged onset date. (T at 173).  Plaintiff continued working for several years after receiving this diagnosis. (T at 133).  There is no medical evidence to indicate that Plaintiff's PTSD worsened after the alleged onset date and there is a question as to whether the diagnosis still applied. Numerous evaluations of Plaintiff's psychological difficulties made no reference to a continuing diagnosis of PTSD and contained no indication of symptoms particularly related to such a diagnosis.  (T at 209, 216, 254, 272).  A December 2004 report from University Hospital in Syracuse, New York indicated that Plaintiff had "no symptoms of PTSD." (T at

8

187).  In January of 2005, Plaintiff denied any PTSD symptoms, despite a history of abuse by a boyfriend. (T at 206).  Accordingly, "[a]lthough the threshold showing required in order to establish the requisite level of severity of Step Two is modest," Hulbert v. Comm'r of Social Sec., No. 6:06-CV-1099, 2009 WL 2823739, at *10 (N.D.N.Y. Aug. 31, 2009), the medical record in this particular case supports the ALJ's determination that Plaintiff's PTSD is a non-severe impairment.

Moreover, because the ALJ concluded that Plaintiff had other impairments considered severe under the Act (i.e., major depression, social/generalized anxiety, and obsessive compulsive disorder) and continued with the sequential analysis, any arguable error in his finding with respect to the severity of Plaintiff's PTSD was harmless. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A.

9

07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008). Accordingly, this Court finds

no reversible error with respect to the ALJ's step two analysis.

### b. RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do

despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily,

RFC is the individual's maximum remaining ability to do sustained work activities in an

ordinary work setting on a regular and continuing basis, and the RFC assessment must

include a discussion of the individual's abilities on that basis. A 'regular and continuing

basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a

claimant's physical abilities, mental abilities, symptomatology, including pain and other

limitations that could interfere with work activities on a regular and continuing basis. 20

C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence

in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737

F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, as discussed above, the ALJ found that Plaintiff retained the residual

functional capacity ("RFC") to perform work at all levels of exertion. (T at 24). However,

the ALJ determined that Plaintiff was limited to work in a low stress environment, with no

production pace requirements or supervisory duties and only simple decision-making. (T

at 24). Further, the ALJ concluded that Plaintiff should avoid crowds and the use of

telephones. (T at 24). The ALJ found that Plaintiff could maintain time and attendance to

work if these restrictions were observed. (T at 24).

Plaintiff challenges this determination, pointing to several pieces of evidence in the

administrative record.  Kristin Neagle, Plaintiff's vocational counselor, and Susan Catalino, Plaintiff's program manager, submitted a letter describing Plaintiff's part-time employment at "Provisions Restaurant and Bakery," a transitional vocational program for persons with mental illness. (T at 252).  According to Ms. Neagle and Ms. Catalino, despite numerous supports, Plaintiff was unable to transition from this highly-structured work environment into competitive employment due to episodes of paranoia, anxiety, and absenteeism. (T at 252-53).

Jill Boyer, Plaintiff's social worker and mental health coordinator, opined that Plaintiff could understand, remember, and carry out simple instructions; but had moderate limitations with regard to making judgments on simple work-related decisions; understanding, remembering, and carrying out complex instructions; and making judgments on complex work-related decisions. (T at 254).  Ms. Boyer assessed moderate impairments with respect to interacting appropriately with the public, supervisor(s), and co-workers; and marked limitations as to responding appropriately to usual work changes and changes in a routine work setting. (T at 255).

Dr. Joseph Zollo, Plaintiff's treating psychiatrist, assessed that Plaintiff had a good ability to follow work rules, relate to co-workers, interact with supervisor(s) and deal with the public. (T at 249).  Dr. Zollo found poor ability to use judgment, deal with work stress, and maintain attention/concentration. (T at 249).  Further, he found a fair ability to function independently. (T at 249).  Dr. Zollo opined that Plaintiff had a poor ability to understand, remember, and carry out complex job instructions; fair ability to understand, remember, and carry out detailed (but not complex) job instructions; and good ability to understand, remember, and carry out simple job instructions. (T at 250).  He also indicated that Plaintiff

11

had good ability to maintain personal appearance and behave in an emotionally stable manner, but a poor ability to relate predictably in social situations and a fair-poor ability to demonstrate reliability. (T at 250).  Dr. Zollo noted that Plaintiff experiences "marked anxiety in social settings." (T at 250).

A January 2007 assessment signed by both Ms. Boyer and Dr. Zollo stated that Plaintiff had slight limitations in terms of her ability to understand, remember, and carry out short, simple instructions; moderate impairments with regard to the ability to make judgments on simple work-related decisions, and marked limitations with respect to understanding, remembering, and carrying-out detailed instructions. (T at 259).

The treating providers further opined that Plaintiff had slight limitations with regard to interacting appropriately with the public and co-workers; moderate difficulties with interacting with supervisor(s); and marked limitations in terms of responding appropriately to work pressures in a usual work setting and responding appropriately to changes in a routine work setting. (T at 260).

Notwithstanding the foregoing, the ALJ concluded that Plaintiff could perform her past relevant work as a library page and retained the RFC to perform competitive, remunerative work, provided she was placed in a low stress environment (defined as no production pace requirements or supervisory duties and only simple decisions). (T at 24, 29).  In particular, the ALJ concluded that Plaintiff could maintain time and attendance if these parameters were observed. (T at 24).

This Court finds the ALJ's RFC determination was not supported by substantial evidence for the following reasons:

### i.      Dr. Zollo

12

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, an ALJ should consider the following factors when determining the proper weight to afford to the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, the ALJ recognized "Dr. Zollo's speciality, his treating relationship with [Plaintiff], and the support in the record [for Dr. Zollo's findings," and, as such, afforded Dr. Zollo's assessment "considerable weight." (T at 28)  However, the ALJ indicated that his decision to credit Dr. Zollo's opinion was "subject to [Plaintiff's] admissions that she could work in an office setting around the same few people in her own work space, and that she

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

could perform her past relevant work as a library page." (T at 28-29).

As outlined above, Dr. Zollo opined, *inter alia*, that Plaintiff had marked limitations with respect to understanding, remembering, and carrying-out detailed instructions. (T at 259).  He also found marked limitations in terms of responding appropriately to work pressures in a usual work setting and responding appropriately to changes in a routine work setting. (T at 260). Dr. Zollo found that Plaintiff had poor ability to use judgment, deal with work stress, and maintain attention/concentration. (T at 249). He noted that Plaintiff experiences "marked anxiety in social settings." (T at 250).

At the hearing before the ALJ, Plaintiff testified regarding the demands of her past relevant work as a library page. (T at 431).  She explained that this job was the "least stressful" of her past jobs. (T at 432).  Plaintiff stated that she could handle working in an office with only a few other workers, provided it was not crowded and she had the opportunity to get to know and be comfortable with the people she was working with. (T at 437).  Plaintiff also testified that she could work in an larger office, with 40 to 45 people working there, if she had a private workspace. (T at 438).  Plaintiff said she could "probably" maintain a regular schedule if she was compliant with her treatment. (T at 439).

As noted above, the ALJ assigned "considerable weight" to Dr. Zollo's assessment, but discounted the treating psychiatrist's findings to the extent they were inconsistent with Plaintiff's statements concerning her vocational abilities, which the ALJ characterized as "admissions." (T at 28-29).  Explaining his decision, the ALJ noted that "[a]dmissions against interest such as [Plaintiff's statements] are inherently credible because there is no motivation to make them except for the truth of the statement." (T at 28).   The Commissioner adopts this rationale in his Brief before this Court, asserting that Plaintiff had

14

no reason to make the statements concerning her vocational abilities other than because they were true.  (Docket No. p. 9-10).

The ALJ and the Commissioner both ignore an obvious, material fact.  Plaintiff suffers from severe mental impairments.  She explained during the hearing that she was "very anxious" because she did not know anyone in the room, except for a friend ("Joanna") who had accompanied her to the hearing. (T at 436).  Contrary to the ALJ's bare assertion that Plaintiff had "no motivation" to make the statements except for the truth, there is good reason to conclude that Plaintiff overstated her abilities for fear of offending the ALJ and/or because her judgment/insight was impaired by her mental impairments.

Indeed, Plaintiff's initial response when asked whether she could perform a task was often equivocal (*e.g.*, "probably"), with her answers becoming more definite only after the ALJ made it abundantly clear from his questions that he was looking for a particular response.  (T at 437, 438, 439).  The following exchange is illustrative:

> Q:     If the library called you up tomorrow and said we need
>        you back as a page, could you do it?
> A:     Yes –
> Q:     Okay.
> A:     – yes.
> ATTY: Just part-time.
> A:     Yes, part-time.
> Q:     No, full-time.
> A:     Full-time, yes.

(T at 449).

Moreover, the record contained opinion evidence rendered by a psychiatrist that Plaintiff tended to exaggerate her vocational abilities. (T at 170).  Although this opinion was rendered in 1988, well before the alleged onset of disability, it should have given the ALJ at least some pause before he made the misplaced and expedient declaration that Plaintiff

15

had "no motivation" to describe her vocational abilities except the truth.

Further, the record contained important indications that Plaintiff's assessment of her vocational abilities was not accurate.  Indeed, the record contained a first-hand report (*i.e.* an evaluation provided by Plaintiff's current employer, Provisions Bakery) strongly suggesting that Plaintiff lacked the ability to perform competitive, remunerative work.  In particular, Ms. Neagle and Ms. Catalino described Plaintiff as "very motivated to work," but expressed no doubt that her absenteeism and social anxiety significantly impacted her ability to perform her job duties. (T at 252-53).  They described Plaintiff's "earnest attempts" to work, but noted that she had been unable "to perform her duties in a consistently adequate manner since she began her tenure at Provisions two years [earlier.]" (T at 253).  Susan Catalino indicated that Plaintiff becomes "scared when she is around strangers," exhibits paranoia, and "[t]here are times when her anxiety becomes so bad that she must leave work, which is significant in light of the fact that Provisions is a familiar and safe place for [Plaintiff]." (T at 252).  Ms. Neagle and Ms. Catalino also indicated that Plaintiff's pattern of illness-related absenteeism would "not be tolerated by an employer in the competitive sector." (T at 253).

Obviously, these first-hand assessments of Plaintiff's attitude and performance in a highly-structured work environment over a significant period of time (over two years) should have cast doubt on the ALJ's decision to opportunistically credit Plaintiff's testimony. The descriptions of Plaintiff's "earnest" attitude and work ethic indicated that Plaintiff's aspirational goals exceeded her actual vocational abilities.  This certainly contradicts the ALJ's suggestion that Plaintiff had no "motivation" to exaggerate her abilities.  At the very least, the ALJ was bound to give an explanation as to why he was crediting Plaintiff's

16

statements regarding her vocational abilities when the actual evidence (in the form of a detailed, strongly-worded letter from her long-term employer) contradicted those statements.

Instead of reconsidering or justifying his conclusion that Plaintiff's statements regarding her work-related abilities had to be accepted at face value, the ALJ dismissed the report provided by Ms. Neagle and Ms. Catalino as "not supported by the clinical evidence of record." (T at 29). It is not clear what "clinical evidence" the ALJ is referencing. Certainly the assessments of Dr. Zollo and Ms. Boyer (the treating social worker) are consistent with the descriptions of social anxiety and difficulties with work stress noted by Ms. Neagle and Ms. Catalino.

It is possible the ALJ was referring to a series of clinical notes indicating, at various times, that Plaintiff's symptoms were controlled by medication and treatment, including an evaluation from Dr. Zollo which assigned Plaintiff a Global Assessment Functioning ("GAF") score of 65.[5] (T at 344). However, the ALJ's summary (T at 26-27) reflects a "pick and choose" approach to the record, which also included numerous missed appointments, uneven progress, and persistent complaints of anxiety and depression. (T at 289, 294, 310, 313-14, 319, 330, 334). In addition, the ALJ appears not to have accounted for the fact that Plaintiff's depression and anxiety remained somewhat stable only while she was employed part-time in a highly structured employment environment. Thus, contrary to the ALJ's conclusion, the assessments offered by Ms. Neagle and Ms. Catalino are fully supported

---

[5]"[A] GAF score of 65 . . . reflects '[s]ome mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships.'" Kohler v. Astrue, 546 F.3d 260, 262 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.2000)).

by the clinical evidence.   Indeed, as noted above, the assessments by these two professionals are actually supported by the findings of Plaintiff's treating psychiatrist.  With regard to the clinical notes indicating some progress with regard to Plaintiff's symptoms referenced by the ALJ, it would be expected that Plaintiff would experience improvement or, at least, some stability if she avoided the sort of pressures and stress that, as noted by Dr. Zollo, exacerbated her psychiatric symptoms. (T at 250).  In a telling clinical note from November 2006, Plaintiff was described as presenting "relatively well," but she expressed anxiety about a possible end to her supportive employment. (T at 269).  The ALJ does not appear to have taken any of these factors into account when he assigned little weight to first-hand evidence of Plaintiff's actual performance in an employment setting over a significant period of time.

Lastly, although not explicitly stated, it is likely that the ALJ's decision to partially discount Dr. Zollo's assessment was based upon the findings of the consultative examiner and non-examining State Agency review consultant.

Dr. Jeanne Shapiro, a consultative examiner,  opined that Plaintiff appeared to be capable of understanding and following simple instructions and directions; performing simple and complex tasks with supervision and independently; and maintaining attention and concentration to tasks. (T at 216).  Dr. Shapiro further assessed that Plaintiff could regularly attend to a routine and maintain a schedule; learn new tasks; deal with a moderate amount of stress; and relate to and interact appropriately with others (while feeling "uncomfortable in a crowd at times."). (T at 216).  The non-examining State Agency review consultant (Dr. Carlos Gieseken) opined that Plaintiff had mild restrictions with regard to activities of daily living, moderate difficulties in terms of maintaining social

functioning, and mild limitations with respect to maintaining concentration, persistence, or pace. (T at 240).  In particular, the consultant found that Plaintiff was "not significantly limited" in terms of her ability to maintain regular attendance and perform activities within a schedule. (T at 244).

These reports do not provide substantial evidence sufficient to justify the ALJ's decision to discount Dr. Zollo's assessment, in light of the significant considerations outlined above (*i.e.* the reasons to doubt Plaintiff's self-assessment, the selected characterization of the clinical evidence, and the disregard of first-hand evidence of Plaintiff's actual employment performance).

Indeed, both of the examiners indicated an ability to maintain a regular schedule and attendance at work – findings directly contradicted by Plaintiff's employer and inconsistent with the assessment of Plaintiff's treating providers.  To wit, the evidence indicated that Plaintiff was not able to maintain satisfactory attendance even while working part-time in a highly structured and supportive setting.  (T at 252-53).

Accordingly, any arguable reliance upon the findings of the consultative examiner and/or non-examining State Agency review consultant are of questionable credibility and cannot justify the ALJ's decision. Thus, these findings do not constitute substantial evidence in support of that decision.  See Griffith v. Astrue, 08-CV-6004, 2009 WL 909630 at *9 (W.D.N.Y. July 27, 2009) ("The State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence"); Crespo v. Apfel, No. 97 CIV 4777, 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17,1999) ("In making a substantial evidence evaluation, a consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit or

19

review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day."); Garzona v. Apfel, No. 96 CV 6249, 1998 WL 643645, at *1 (E.D.N.Y. Sep. 18, 1998)("[T]he opinion of a non-examining consultative physician, without more, [is] insufficient to constitute the requisite contrary substantial evidence to override the treating physician's assessment.").

In sum, Dr. Zollo, Plaintiff's treating psychiatrist, offered assessments of Plaintiff's limitations that contradicted the ALJ's RFC findings, particularly with regard to Plaintiff's ability to cope with customary work-related stress, respond appropriately to routine changes to the work environment, and maintain attention and concentration.  Dr. Zollo's opinion was presumptively entitled to controlling weight.  The ALJ decided to discount, in part, Dr. Zollo's findings, electing to credit Plaintiff's self-reports of her own abilities, rather than the professional assessment made by her treating psychiatrist.  Given Plaintiff's history of over-estimating her vocational abilities, impaired judgment, evident anxiety during her testimony and apparent desire to please the ALJ, and the first-hand evidence of significant difficulties coping with stress and maintaining attendance even in a highly-structured work setting, the ALJ's decision to give Plaintiff's testimony more weight than Dr. Zollo's opinion was not supported by substantial evidence and amounted to reversible error.

### ii.    Ms. Boyer

As discussed above, Julie Boyer, Plaintiff's treating social worker and mental health coordinator, opined that Plaintiff had marked difficulties responding appropriately to usual work situations and to changes in a routine work setting. (T at 255).  Ms. Boyer also indicated that Plaintiff experienced "lengthy depressive episodes," resulting in symptoms such as suicidal ideation, isolation, poor concentration, sleep disturbance, lack of energy,

20

and severe rumination (*i.e.* obsessing). (T at 255).   Ms. Boyer concluded that these episodes "could interfere with attendance at work and completing daily tasks as expected." (T at 255).

The ALJ made the following finding with respect to Ms. Boyer's assessment: "Based on Ms. Boyer's lengthy treatment history with [Plaintiff], Dr. Zollo's concurrence, and the support found in the record, Ms. Boyer's opinions have been given considerable weight, . . . but subject to the same admissions by [Plaintiff]." (T at 29).

As such, the ALJ again elected to discount a professional assessment rendered by a treating provider based upon Plaintiff's self-reports of her vocational abilities.   This decision was flawed for the reasons outlined above. Plaintiff had a history of over-estimating her capabilities and her statements regarding her ability to maintain competitive employment were contradicted not only by her treating providers, but by her present employer.   In addition, as discussed above, a review of the transcripts strongly indicates that Plaintiff, in an anxious and stressful condition, was responding to prompts from the ALJ and, in the context of the hearing, obviously provided the answers she thought he wanted to hear.   (This indication is further supported by the letter from Ms. Neagle and Ms. Catalino, which described Plaintiff as "very motivated to work" and "earnest," but ultimately unable to maintain adequate attendance and deal with routine stress and social anxiety on a consistent basis).

Accordingly, this Court finds that the ALJ's decision to discount Ms. Boyer's assessment based upon Plaintiff's testimony likewise constitutes reversible error.

### c.    Past Relevant Work & Ability to Perform Other Jobs

"[I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an

21

inability to return to her previous specific job and an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citing SSR 82-62). A claimant is not disabled if she can perform her past relevant work, either as she actually performed it, or as it is generally performed in the national economy. See SSR 82-61; Jock v. Harris, 651 F.2d 133, 135 (2d Cir.1981)(noting that "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally").

"Determination of the claimant's ability to perform past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy." Speruggia v. Astrue, No. 05-CV-3532, 2008 WL 818004, at *12-*13 (E.D.N.Y. Mar. 26, 2008).

In this case, the ALJ concluded that Plaintiff could perform her past relevant work as a library page.  (T at 29).  The ALJ cited two factors in support of this decision – Plaintiff's statement that she could perform the library page job and the testimony of a vocational expert.  (T at 29-30).  As to the former, this Court finds the ALJ's decision flawed for the reasons outlined in detail above.  Specifically, it was error for the ALJ to credit Plaintiff's statements in light of the substantial evidence indicating that her limitations were much more severe.  Concerning the latter, the ALJ's reliance on the vocational expert's testimony was misplaced because the hypotheticals presented to the ALJ were flawed.

22

Whether a hypothetical given to a vocational expert is appropriate depends on whether the hypothetical fully encompasses the claimant's limitations. Magee v. Astrue, No. 5:05-CV-413, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008) (citing Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 799 (6th Cir.1987)). "If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability." Id.

"[T]he ALJ must present a hypothetical that incorporates all of a claimant's impairments." Salmini v. Astrue, No. 3:06–CV–458, 2009 WL 1794741, *11 (N.D.N.Y. June 23, 2009) (citation omitted). If the ALJ poses "hypothetical questions [that] do 'not include all of a claimant's impairments, limitations and restrictions, or [are] otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability.'" Id. (quotation omitted).

In the instant case, the ALJ's hypotheticals presumed that Plaintiff could "maintain time and attendance" requirements customarily imposed by employers. (T at 453-54). Based upon this assumption, the vocational expert opined that Plaintiff could perform her past relevant work as a library page. (T at 454). However, as discussed above, the ALJ's conclusion that Plaintiff could maintain a regular work schedule was based almost entirely on Plaintiff's testimony, notwithstanding the strong evidence to the contrary (*e.g.* assessments by treating providers, information from her employer, and numerous indications of missed therapeutic appointments). Accordingly, the hypothetical did not adequately or accurately present Plaintiff's true limitations to the vocational expert and the vocational expert's testimony concerning Plaintiff's ability to perform her past relevant work cannot therefore constitute substantial evidence.

23

This same flaw undermines the ALJ's step five determination that there are other jobs that exist in the national economy that Plaintiff can perform. (T at 30).  The ALJ's finding at this step was based upon the answers provided by the vocational expert. (T at 30-31, 454-55, 457-59).  As noted above, the ALJ's hypotheticals did not properly present Plaintiff's limitations and the vocational expert's responses cannot be considered substantial evidence.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Under the Second Circuit's rulings, a remand solely for calculation of benefits may be appropriate when the court finds that there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision...." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the ... substantial evidence standard."); Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

24

In the present case, this Court finds persuasive proof of disability.  Dr. Zollo, Plaintiff's treating psychiatrist, opined that Plaintiff had a poor ability to use judgment, deal with work stress, and maintain attention/concentration. (T at 249).  He also found Plaintiff's ability to relate predictably in social situations and demonstrate reliability were impaired. (T at 250).  Ms. Neagle and Ms. Catalino provided first-hand assessments of Plaintiff's inability to perform basic work-related activities.  They indicated that, after working with Plaintiff over an extended period of time, she demonstrated an inability to perform her work duties on a consistent basis and to maintain adequate attendance, even in a highly-structured employment setting designed to help people with mental illness transition into competitive employment. (T at 252-53).  Ms. Boyer, Plaintiff's treating social worker, found marked limitations with respect Plaintiff's ability to respond appropriately to usual work situations and changes in a routine work setting. (T at 255). Ms. Boyer also noted difficulties maintaining attendance and completing tasks. (T at 255).

As discussed in detail above, the ALJ discounted these significant findings primarily by accepting Plaintiff's testimony concerning her vocational abilities.  The ALJ believed that Plaintiff had no "motivation" to overstate her abilities.  In fact, however, the medical record indicated that Plaintiff tended to exaggerate her skills, the report from Plaintiff's employer demonstrated that Plaintiff's earnest attitude and work ethic did not match her actual job performance, and a review of the hearing transcript strongly suggests that a very anxious claimant likely felt pressured into providing responses she believed the ALJ wanted to hear. In addition, the findings of Plaintiff's treating providers, most of which were assigned "considerable weight" by the ALJ, indicated significantly impairment judgment and difficulty dealing with stress and strangers (both of which were present during the hearing before the

ALJ).  Thus, substantial evidence exists in the record to conclusively indicate that Plaintiff was disabled within the definition of the Social Security Act during the relevant time period and, in particular, that she was unable to perform the non-exertional demands of competitive, renumerative employment on a full-time basis.  In contrast, the evidence cited by the ALJ as support for his finding of non-disability (primarily, Plaintiff's testimony) is suspect for the reasons stated above and is contradicted by credible and compelling reports from Plaintiff's treating providers and her employer.

Accordingly, this Court finds the proof of disability to be persuasive and concludes that a remand for further evidentiary proceedings would serve no purpose.  As such, this Court remands a remand for calculation of benefits.


## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, that the Commissioner's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner for calculation of benefits.


Respectfully submitted,


Victor E. Bianchini
United States Magistrate Judge

Dated:   May 24, 2011

      Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were*

27

*not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc.

v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

May 24, 2011

Victor E. Bianchini
United States Magistrate Judge